UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

_____

KEVIN SCANLON,

                Plaintiff,                            **DECISION**

    v.                                                     **and**

BRICKLAYERS AND ALLIED CRAFTWORKERS,          **ORDER**
LOCAL NO. 3, BUFFALO CHAPTER J.A.T.C. and
DAN ROSE,                                                 **05-CV-628A(F)**

                Defendants,

_____

APPEARANCES:       E. PETER PFAFF, ESQ.
                              Attorney for Plaintiff
                              673 Main Street, Suite 5
                              East Aurora, New York 14052

                              LIPSITZ GREEN SCIME CAMBRIA LLP
                              Attorney for the Defendants
                              ROBERT L. BOREANAZ, of Counsel
                              42 Delaware Avenue
                              Buffalo, New York 14120

## JURISDICTION

This case was referred to the undersigned by the Hon. Richard J. Arcara on December 9, 2005, for all pretrial matters. (Doc. No. 4). The matter is presently before the court on Plaintiff's motion to compel discovery, filed October 31, 2006. (Doc. No. 16).

## BACKGROUND[1]

This action was commenced on September 1, 2005 by Kevin Scanlon ("Scanlon" or "Plaintiff") alleging Defendants, Bricklayers and Allied Craftworkers Local No. 3 ("the

---

[1] Taken from the proceedings and motion papers filed in this action.

Union"), the Buffalo Chapter Joint Apprenticeship Training Committee (" the J.A.T.C."), and Mr. Dan Rose, individually and in his capacity as the Union President, and J.A.T.C. Chairman ("Rose"), violated Plaintiff's rights under 29 U.S.C. §411,[2] the Labor Management Reporting and Disclosure Act of 1959 (LMRDA) ("the Act"), when the Defendants terminated Plaintiff from employment with the J.A.T.C. and from membership in the Union without notice of charges or a hearing permitting Plaintiff to challenge the charges, or to present evidence in his own defense.  Specifically, Plaintiff claims that Defendants violated "his due process rights, right to a fair hearing, and freedom of speech rights arising under and guaranteed by" §411(a)(2) and (a)(5) of the Act . Complaint ¶ 2.  Plaintiff further asserts Rose, while Union president, used physical violence and intimidation to obstruct Plaintiff's due process rights under the Union's constitution and bylaws. Complaint ¶ 9.

      Plaintiff filed the instant motion to compel discovery (Doc. No. 16) on October 31, 2006 ("Plaintiff's Motion"), supported by the attached Affirmation of E. Peter Pfaff, Esq.(" First Pfaff Affirmation"), counsel for Plaintiff ("Pfaff") .  Specifically, Plaintiff's Motion requests that Rose be directed to appear for an oral deposition pursuant to Fed. R. Civ. P. 30, and seeks discovery of the minutes of the November 19, 2004 and March 11, 2005 meetings of the J.A.T.C..  In opposition, Defendants filed, on November 14, 2006, the Affirmation of Robert L. Boreanaz, Esq.  ("Boreanaz Affirmation"), counsel for Defendants ("Boreanaz") (Doc. No. 18).

---

[2] 29 U.S.C. §411 ("§411") codifies a bill of rights of members of labor organizations including the right to nominate officers, participate in open elections, to attend meetings of the organization, freedom of speech, freedom of assembly, and freedom from improper disciplinary action regarding union matters without due process. *Local No. 82, Furniture and Piano Moving, Furniture Store Drivers, Helpers, Warehousemen and Packers v. Crowley,* 467 U.S. 526, 531 (1984). *Finnegan v. Leu,* 456 U.S. 431, 437 (1982).

Oral argument on Plaintiff's motion was conducted December 4, 2006. At oral argument, the court requested the parties file additional legal memoranda, and that Defendants submit for *in camera* review the documents for which Plaintiff seeks disclosure. The court denied, on the record (Doc. No. 16) Plaintiff's request that Defendants produce former Union officer and J.A.T.C. employee Scott Benk ("Benk") for deposition, and reserved decision on Plaintiff's other requests.

On December 14, 2006, Defendants filed a memorandum of law ("Defendants' Memorandum"), attached to which are the Affidavits of Robert L. Boreanaz, Esq., ("Boreanaz Affidavit") and Eugene W. Salisbury, Esq., the attorney for the J.A.T.C. ("Salisbury Affidavit"). On December 22, 2006, Plaintiff filed a Memorandum in Support of Motion to Compel ("Plaintiff's Memorandum") (Doc. No. 25), attached to which is an Affirmation of E. Peter Pfaff, Esq. ("Second Pfaff Affirmation"), and portions of the October 19, 2006 deposition testimony of James Clark Logan ("Logan"), who is a J.A.T.C. member and a trustee of the Apprenticeship Fund ("Logan Deposition"). Based on the following, Plaintiff's motion is GRANTED in part and DENIED in part.

## **FACTS**[3]

At all times relevant Plaintiff was a laborer and Union member who participated in the Union's Apprenticeship Program ("Apprenticeship Program"). Plaintiff claims that in December 2004, Defendants terminated his employment in the apprenticeship

---

[3] Taken from the pleadings and motion papers filed in this action. "Dep. Tr. at ___" references are to pages of the transcript of the Logan Deposition attached to the Second Pfaff Affirmation (Doc. No. 25).

program with the Union and his Union membership in violation of the Act. Complaint ¶ 2.

Plaintiff's motion is based upon Boreanaz's disclosure of three documents to Pfaff, at Pfaff's request, during Logan's deposition conducted on October 19, 2006. The disclosed documents included (1) the minutes of the November 19, 2004 J.A.T.C. meeting ("November 19, 2004 Meeting Minutes"), (2) the minutes of the March 11, 2005 J.A.T.C. meeting ("March 11, 2005 Meeting Minutes"), and (3) a "Timeline involving Kevin Scanlon"("the timeline"),[4] prepared by Benk, attached to the November 19, 2004 Meeting Minutes ("the documents"). Plaintiff claims the documents contain discoverable information regarding Plaintiff's termination. Plaintiff asserts that during the Logan Deposition, while representing Defendants and in response to Pfaff's request during the Logan deposition, Boreanaz voluntarily tendered the documents to Pfaff, thereby waiving any applicable attorney-client privilege and work-product protection in the documents. Plaintiff's Motion ¶6. Defendants assert both privilege and work-product protection in the documents and contend no waiver occurred as a result of Boreanaz's actions at the deposition with regard to the documents. Defendants' Memorandum at 5-8.

Present at the Logan deposition were Plaintiff, Pfaff, Logan and Boreanaz. At one point during the deposition, Pfaff asked Logan, "[b]efore you came here today, Sir, did you review any documents?" Dep. Tr. at 29. Logan responded, "yes" to this question. *Id.* at 29. In response to Pfaff's further questioning as to what documents

---

[4] The Timeline contains Plaintiff's disciplinary records and other personnel matters relevant to Plaintiff's participation in the Apprenticeship Program.

Logan reviewed, Logan stated that he had reviewed, "[t]he minutes of the J.A.T.C. meetings." *Id.* at 30.  Pfaff then inquired if Logan had the documents in his possession at the deposition and Logan stated that he did. *Id.* at 30.  In response, Pfaff asked to view the documents, and Boreanaz requested Pfaff to sit on Logan's side of the table to facilitate the review. *Id*. at 30.  Pfaff, in accordance with Boreanaz's suggestion then changed seats at the table, and commenced examining the November 19, 2004 Meeting Minutes. *Id*. at 30.  Upon completing his review, Pfaff noted the attached Timeline and asked if the Timline was "all about" the Plaintiff. *Id*. at 30.   Logan answered in the affirmative and Pfaff asked whether it "was something that was prepared by Mr. [Benk]...?", to which Logan responded "[t]hat's correct." *Id*. at 30-3.

    At that point, Boreanaz objected to disclosure of the documents asserting attorney-client privilege and work-product protection, and requested a conference with Logan outside the deposition room. Dep. Tr. at 31.  Without objection by Plaintiff, Boreanaz and Logan exited the deposition room, conversed, reentered the room, and resumed the deposition. *Id*.  Boreanaz informed Pfaff that "[t]here is in Mr. Logan's possession something that is called a time line involving Kevin Scanlon.  I believe that the time line may have been prepared at either the direction of or at the request of or under the supervision of Gene Salisbury [counsel to the J.A.T.C.], who was at the meeting or the meetings with the J.A.T.C.  . . .  I cannot ascertain if they were prepared under, you know, specific and strict guidelines such that they would qualify as an attorney/client privileged document right now . . . I must, however, assert privilege to the documents now subject to conferring with Mr. Salisbury." *Id*. at 31-32 (bracketed text added).

Thereupon, Pfaff ceased further examination of the November 19, 2004 Meeting Minutes and the Timeline, and instead requested copies of such documents. Dep. Tr. at 32.  Pfaff also asked Logan to check for other J.A.T.C. minutes pertaining to Plaintiff. *Id*.  Pfaff also requested to review minutes of two other J.A.T.C. meetings. *Id*. at 32-33. In reference to the requested minutes of J.A.T.C. meetings, Boreanaz requested Pfaff to, "shield [his] eyes from attorney/client information for the time being." *Id*. at 33 (bracketed text added).[5]  Pfaff asked Logan if the November 19, 2004 and March 11, 2005 Meeting Minutes contained information pertaining to Plaintiff, to which Logan responded, "yes." *Id*. at 34.  Pfaff then requested copies of both the November 19, 2004 and March 11, 2005 Meeting Minutes, which was refused by Defendant. *Id*.

### DISCUSSION

In the Complaint, Plaintiff alleges that actions taken by Rose, while president of the Union, directly interfered with Plaintiff's rights of free speech and due process protected by the Act, and that, as a named defendant, Rose must be made available for oral deposition pursuant to Fed. R. Civ. P. 30 (a). Plaintiff's Motion ¶ 8.  Plaintiff also contends that "the minutes of the meetings, together with the timeline are not properly the subject of a claim of [the] attorney-client privilege" or work-product doctrine. *Id*. at 6. Further, Plaintiff argues, any privilege or work-product protection which could be applicable to the documents were waived because of Boreanaz's voluntary disclosures at the Logan deposition, as well as Logan's review of the documents in preparation for

---

[5] The record does not indicate whether Pfaff complied with this request.  For the purposes of this analysis, the court assumes he did.

the deposition. *Id.*

**1.     Request to Depose Rose**

It is undisputed that Rose served as Union president and J.A.T.C. chairman when the challenged conduct by Defendants occurred. In the Complaint, Plaintiff alleges that, while president of the Union, Rose engaged in a physical confrontation with Plaintiff during the winter of 2003 and used his positions as Union president and J.A.T.C. chairman to intimidate Plaintiff and interfere with Plaintiff's free speech concerning Union matters as protected by § 411. In particular, Plaintiff claims that Rose assaulted Plaintiff during the alleged confrontation. Complaint ¶ 9.

Under § 411 (a)(4), "[n]o labor organization shall limit the right of any member thereof to institute an action in any court...irrespective of whether or not the labor organization or its officers are named as defendants or respondents in such action or proceeding. . .." Additionally, under § 411,  "[a] union officer may, in appropriate circumstances, be sued in his/her individual capacity for damages for acts undertaken in an official capacity." *Johnson v. Kay*, 742 F.Supp. 822, 833-34 (S.D.N.Y. 1990). Thus, Defendants' assertion that because Rose has, since the alleged threats against Plaintiff, been replaced as Union president and J.A.T.C. chairman is irrelevant to whether Rose is a party to the instant action, and thus subject to oral deposition pursuant to Fed. R. Civ. P. 30 (a). Notably, Defendants have, to date, failed to seek dismissal on the action against Rose. Accordingly, Plaintiff's motion requesting Rose appear for deposition is GRANTED. Such deposition shall be scheduled and conducted <u>within thirty (30) days</u> of this Decision and Order.

**2.      Discovery of the November 19, 2004 Meeting Minutes, the March 11, 2005 Meeting Minutes (together "the Meeting Minutes") and the Timeline.**

      A.     <u>Attorney-Client Privilege as Applicable to the Meeting Minutes</u>

As noted, Plaintiff seeks to compel the production of the Meeting Minutes and the Timeline. Plaintiff Motion at 3 ¶ B.  In support, Plaintiff asserts that the attorney-client privilege does not extend to the Meeting Minutes because such documents are relevant to the pending action and as the documents were used in preparing Logan for deposition, they are subject to disclosure pursuant to Fed. R. Evid. 612.  Plaintiff's Motion ¶ 4.   Plaintiff also contends that if the court finds that either attorney-client privilege or the work-product protection applies to the documents, that the Defendant waived such privilege or protection by voluntarily disclosing the documents to Plaintiff's counsel at Plaintiff's request during the Logan deposition. Plaintiff Motion ¶ 5-6.

In opposition, Defendants assert that the Meeting Minutes are within the attorney-client privilege. Boreanaz Affidavit ¶ 4.  Defendants maintain that the Meeting Minutes contain protected communications between the Union and its attorney, Mr. Salisbury, and, as such, are within the privilege. Defendants' Memorandum at 1. Defendants also argue the Timeline constitutes attorney work-product. *Id*. at 4. Defendants further argue that no waiver of either the privilege or work-production protection occurred as a result of Boreanaz's tendering of the documents to Plaintiff's attorney during the Logan deposition because Defendants timely objected to the disclosure and demanded the return of the documents. *Id*. at 2.  The court first turns to the applicability to the documents of the attorney-client privilege.

The purpose of the attorney-client privilege is to promote "full and frank communication between attorneys and their clients by assuring clients that their disclosures will be held in confidence." *Upjohn Company v. United States*, 449 U.S. 383, 389 (1981). Further, "the privilege exists to protect not only the giving of professional advice to those who can act on it but also the giving of information to the lawyer to enable him to give sound and informed advice." *Id.* at 391. Because Plaintiff asserts a claim arising under federal law, the applicability of the privilege in this action is determined under Fed. R. Evid. 501. *von Bulow v. von Bulow*, 811 F.2d 136, 141 (2d Cir. 1987), *cert. denied*, 481 U.S. 1015 (1987). Fed. R. Civ. P. Rule 26 (b)(3) states, attorney work-product, as defined, is protected subject to a showing of special need.

The party invoking the attorney-client privilege or work-product doctrine has the burden of establishing the applicability of such privilege and protection. Fed.R.Civ. P. 26(b)(3) (party may obtain material prepared in anticipation of litigation upon required showing of need and hardship); *United States v. Stern*, 511 F.2d 1364, 1367 (2d Cir.) (burden of establishing attorney-client privilege is on party asserting the privilege)*, cert. denied*, 423 U.S. 829 (1975); *In re Grand Jury Subpoena*, 599 F.2d 504, 510 (2d Cir. 1979)(burden of establishing work-product doctrine applies on party who asserts protection). Mere conclusory assertions of privilege or work-product protection are insufficient to satisfy this burden. *United States v. Kovel*, 296 F.2d 918, 923 (2d Cir. 1961). The party claiming the privilege or protection must supply opposing counsel with sufficient information to assess the applicability of the privilege or protection without revealing the information which is privileged or protected. Fed R. Civ. P. 26 (b)(5)(A)*;*

*see also United States v. Construction Products Research, Inc.*, 73 F.3d 464, 473 (2d Cir.), *cert. denied*, 117 U.S. 294 (1996).

Because the attorney-client privilege is in derogation of the common law that the court is entitled "to every man's evidence," the privilege must be construed strictly. *In re Horowitz*, 482 F. 2d 72, 81 (2d. Cir 1973) (quoting 8 Wigmore, Evidence §2192, at 70), *cert. denied* 41 U.S. 867 (1973). It is also basic that as "discovery provisions are to be applied as broadly and liberally as possible, the [work-product] privilege limitation must be restricted to its narrowest bounds." *Hickman v. Taylor*, 329 U.S. 495, 506 (1947) (bracketed text added). "A client cannot prevent disclosure of his own document in his attorney's possession unless the two prong test of privilege is met. First, the document must be privileged in the hands of the client. Second, the document must have been transmitted to the attorney for the purpose of obtaining legal advice." *Fisher v. United States*, 425 U.S. 391, 404 (1976).

Defendants assert that the November 19, 2004 Meeting Minutes refer to advice given to the committee by Mr. Salisbury and to protected communications between the J.A.T.C. and Mr. Salisbury. Salisbury Affidavit, ¶ 6. However, "[b]usiness communications, are not protected merely because they are directed to an attorney or by an attorney, and meetings attended or directed by attorneys are not automatically privileged as a result of the attorney's presence." *Kramer v. Raymond Corp.*, 1992 WL 122856 at *1(E.D. Pa. 1992). Additionally, courts have held that "documents described as minutes of meetings with counsel present to provide legal advice would be likely to contain confidential communications, and as such are not available to discovery."

*Wilstein v. San Tropai Condominium Master Assoc.*, 189 F.R.D. 371, 379 (N.D. Ill. 1999). "In the end, . . . , the question is: does the document in question reveal, directly or indirectly, the substance of a confidential attorney-client communication." *Smithkline Beecham Corp. v. Apotex Corp.*, 193 F.R.D. 530, 534 (N.D. Ill. 2000).

Based on the court's *in camera* review, the court finds the Meeting Minutes do not contain information within the scope of the attorney-client privilege and therefore should be disclosed to Plaintiff. Particularly, the actual text of the Meeting Minutes does not reveal directly or indirectly any privileged communication between committee members and Mr. Salisbury, their attorney. There is no reference, either specifically or in substance, stated in the Meeting Minutes to anything said by committee members to Mr. Salisbury or by Mr. Salisbury to the committee. Nor do the Meeting Minutes purport to summarize any legal advice or direction Mr. Salisbury provided to the committee at the meetings regarding the Plaintiff, or the instant litigation. Further, nothing in the record shows that the Meeting Minutes were made at the direction of counsel. Rather, the text of the November 19, 2004 Meeting Minutes are in contradiction to the Salisbury Affidavit in which Mr. Salisbury states that he recalled giving the committee legal advice, "with respect to their [the committee's] legal position concerning the reinstatement of [the Plaintiff]." Salisbury Affidavit ¶ 6 (bracketed text added). A fair reading of the minutes does not corroborate Mr. Salisbury's recollection. Accordingly, the court accepts the more contemporaneous minutes as indicating directly the extent to which counsel provided privileged advice during the meeting. Thus, Defendants have not, as is their burden, established that the attorney-client privilege is applicable to the Meeting

Minutes.  Therefore, it is not necessary to consider Defendants argument that there was no waiver of the privilege or Plaintiff's alternative basis for disclosure under Fed. R. Evid. 612 (use of documents by witness to refresh memory requires production of documents to adverse party.)[6]

Accordingly, the Meeting Minutes are not privileged and should be disclosed. Plaintiff's Motion to compel their production is therefore GRANTED.  The November 19, 2004 and March 11, 2005 Meeting Minutes shall be delivered to Plaintiff <u>within</u> <u>ten</u> <u>(10)</u> <u>days</u> of this Decision and Order.

      B.     <u>Work-Product protection for the Timeline</u>

Plaintiff also seeks the production of "the Timeline" (a separate document) attached to the November 19, 2004 Meeting Minutes.  The Plaintiff contends that the Timeline contains relevant information and that any potential work-product protection for the document prepared in anticipation of litigation, Fed. R. Civ. P. 26 (b)(3), was waived by Defendants' attorney during the Logan Deposition. Plaintiff's Motion ¶ 6. Defendants argues the Timeline is protected by the work-product doctrine and that no waiver occurred.  Defendant's Memorandum at 7-8.  Plaintiff does not seek discovery pursuant to Fed. R. Civ. P. 26 (b)(3).

The purpose of the work-product doctrine is to establish a zone of privacy for the

---

[6] The "potential for conflict [that] exists between Rule 612, which favors disclosure of materials used to refresh a witness's recollection, and the work-product privilege" is resolved on a case-by-case basis by balancing "the competing interests in the need for full disclosure and the need to protect the integrity of the adversary system protected by the work-product rule." *Redvanly v. NYNEX Corp*. 152 F.R.D. 460, 469 (quoting *In re Joint Eastern and Southern Dist. Asbestos Litig.*, 119 F.R.D. 4, 5 (E.D.N.Y. & S.D.N.Y.1988)).

attorney in planning litigation strategy and to prevent an adverse party from "piggybacking" on such attorney's trial preparation work product. *United States v. Adlman*, 68 F.3d 1495, 1501 (2d Cir. 1995). Work-product protection is extended to "the files and the mental impressions of an attorney. . .reflected, . . . , in interviews, statements, memoranda, correspondence, briefs, mental impressions, personal beliefs, and countless other tangible and intangible ways" prepared in anticipation of litigation. *Hickman, supra*, at 510-11. Such material may be produced only if the requesting party demonstrates there is a "substantial need" for the material, and that the requesting party is "unable without undue hardship to obtain the substantial equivalent of the materials by other means." Fed. R. Civ. P. 26(b)(3) ("Rule 26 (b)(3)").

Whether information should be protected as work-product turns on whether the requested information is "(1) a document or a tangible thing, (2) that was prepared in anticipation of litigation and, (3) was prepared by or for a party or by or for his representative." *Brock v. Frank Panzarino, Inc.*, 109 F.R.D.157, 159 (E.D.N.Y. 1986) (quoting *In re Grand Jury Subpoenas*, 561 F.Supp 1247, 1257 (E.D.N.Y. 1982). As noted, the party that invokes "the attorney-client privilege or work-product doctrine has the burden of establishing the applicability of such privilege and protection." *In re Grand Jury Subpoena*, 599 F.2d 504, 510 (2d Cir. 1979)(burden of establishing work-product doctrine on party who asserts protection). Additionally, it is the party that asserts protection that has the "burden of establishing that the protection has not been waived." *von Bulow,* 811 F.2d at 144. Further, this court has stated "it is [the party's asserting protection] burden to establish that privilege has not been waived and that the

[opposing party] will not be prejudiced if the [document] is found to be privileged." *Chapel Park Villa, Ltd. V. The Travelers Insurance Co. Inc.*, 2006 WL 2827867 at *5 (W.D.N.Y. 2006), *see also Hydraflow Inc. v. Enidine Inc.*, 145 F.R.D. 626, 637 (W.D.N.Y. 1993).

As a threshold matter, the court finds, upon an *in camera* review, that the Timeline constitutes work-product. A review of the Timeline demonstrates the Timeline is a tangible document and was created at the request of Mr. Salisbury, the J.A.T.C. attorney, in preparation for a possible future litigation by the Plaintiff. Salisbury Affidavit ¶ 7. Specifically, Salisbury requested Mr. Benk, the past J.A.T.C. training coordinator, to prepare a "outline" of the Plaintiff's history in the Union. Salisbury Affidavit ¶ 7. Plaintiff has not demonstrated otherwise. Although Plaintiff does not specifically rely on Rule 26 (b)(3) for the instant motion, Plaintiff has failed, as required by Rule 26(b)(3), to demonstrate any undue hardship prevents him from obtaining the information contained in the Timeline from alternative means.

Plaintiff also contends that Defendants waived the work-product protection for thetimeline when, Logan, a non-party, reviewed the Timeline in preparation for his October 19, 2006 deposition. Plaintiff's Memorandum at 8. However, Logan's review of the document did not constitute a waiver of work-product protection in the Timeline because Logan, at that time, was, and remains, a Union official and employee. As a Union official, Logan must be considered a member of the Union for which the benefit of work-product protection in the Timeline exists. It is illogical that review of protected work-product by a client, created by an attorney as an agent of the client, for whose

14

ultimate benefit the doctrine exists, effects a waiver of the protection. Therefore, Logan's use of these documents in preparation for his deposition testimony did not constitute a waiver of the work-product protection in the Timeline. Plaintiff cites no authority supporting a contrary analysis.

Plaintiff further argues that Defendants waived the work-product protection when Boreanaz, Defendants' attorney, voluntarily exposed, at Plaintiff's request, the Timeline to the Plaintiff's attorney during Logan's deposition on October 19, 2006. Plaintiff's Motion ¶ 6.

Based on the Logan Deposition transcript it is indisputable that Pfaff examined the Timeline during Logan's deposition. Dep. Tr. at 30.  However, to constitute a waiver of work-product protection, disclosure of an otherwise protected document must "evinced such extreme carelessness as to suggest that it was not concerned with protection of asserted privileges." *Desai v. American International Underwriters*,1992 WL 110731 at *1 (S.D.N.Y. May 12, 1992).  Voluntary disclosure of work-product may be considered inadvertent, and thus not a waiver, if five factors are balanced in favor of the party claiming the protection. *Hydraflow Inc. v. Enidine Inc.*, 145 F.R.D. 626, 637 (W.D.N.Y. 1993).  Specifically, in determining whether a waiver should be upheld against the discovering party the court will consider "[t]he reasonableness of the precautions taken to prevent inadvertent disclosure, [t]he number of inadvertent disclosures, [t]he extent of the disclosure, [t]he promptness of the measures taken to rectify the disclosure, and [w]hether the overriding interest of justice would or would not be served by relieving the party of its error." *Id*. at 637.

In the instant case, application of the relevant factors demonstrates that Mr. Boreanaz's disclosure of the Timeline was inadvertent, and did not constitute a waiver. Although the record does not indicate what precautions were taken by Defendants to avoid such a disclosure in the first place, disclosure of the Timeline appears to have occurred only once during the Logan Deposition, relating to the November 19, 2004 Meeting Minutes to which the Timeline was attached, and that Boreanaz's objection to the disclosure was voiced almost immediately thereafter, specifically asserting the document constituted protected work-product.  As the disclosure was an isolated occurrence, apparently motivated by a desire to cooperatively facilitate Plaintiff's conduct of the deposition, finding a waiver under these circumstances does not advance the interests of justice.  Accordingly, a fair balance of the relevant factors supports the conclusion that Defendants' counsel's disclosure of the Timeline was inadvertent and unintentional.  While arguably greater care in reviewing Defendants' documents prior to the Logan deposition should have been exercised, finding that the disclosure was an intentional waiver would result in an unnecessary injustice to Defendants. *Hydraflow Inc.,* 145 F.R.D. at 638.  Thus, no waiver of the Timeline's work-product protection occurred.  Plaintiff's request for compelled discovery of the Timeline is therefore DENIED.

## CONCLUSION

For the reasons discussed, Plaintiff's request that Defendant Rose appear for an oral deposition is GRANTED.  Such deposition shall be scheduled and conducted <u>within</u> <u>thirty</u> <u>(30)</u> <u>days</u> of this Decision and Order.   Plaintiff's Motion for production of

the Meeting Minutes is GRANTED.   Plaintiff's Motion for production of the Timeline is DENIED.  Defendants shall forward to the Plaintiff copies of the Minutes <u>within</u> <u>ten</u> <u>(10)</u> <u>days</u> of this Decision and Order.  Defendants' documents submitted of *in camera* review will be retained by the court to facilitate potential further judicial review.

SO ORDERED.

/s/ *Leslie G. Foschio*

_____
LESLIE G. FOSCHIO
UNITED STATES MAGISTRATE JUDGE

Dated: April 23, 2007
      Buffalo, New York